UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| TYLER H., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:19-cv-00005-GZS |
| | ) | |
| ANDREW M. SAUL, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

**REPORT AND RECOMMENDED DECISION**

On Plaintiff's application for supplemental security income benefits under Title XVI of the Social Security Act (the Act), Defendant Saul, the Social Security Administration Commissioner, found that Plaintiff has severe impairments, but retains the functional capacity to perform substantial gainful activity. Defendant, therefore, denied Plaintiff's request for disability benefits. Plaintiff filed this action to obtain judicial review of Defendant's final administrative decision pursuant to 42 U.S.C. § 405(g).

Plaintiff received supplemental security income benefits based on his disability as a child. Pursuant to section 1614(a)(3)(H) of the Act, an individual who is eligible for supplemental security income benefits as a child for the month preceding the month in which he or she attains age 18 must have his or her disability redetermined under the rules that govern disability determinations for adults.

Following a review of the record, and after consideration of the parties' arguments, I recommend the Court affirm the administrative decision.

# THE ADMINISTRATIVE FINDINGS

The Commissioner's final decision is the June 8, 2018, decision of the Administrative Law Judge. (ALJ Decision, ECF No. 9-2).[1] The ALJ's decision tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. § 416.920.

The ALJ found that Plaintiff has severe, but non-listing-level impairments consisting of affective disorder, anxiety disorder and personality disorder (singly and in combination). (R. 14.) The ALJ did not find that the attention deficit hyperactivity disorder (ADHD) and oppositional defiant disorder (ODD) claimed by Plaintiff were severe impairments. Based on his review of the record, the ALJ determined that the Plaintiff has the residual functional capacity (RFC) to perform a full range of work at all exertional levels, but was limited to performing simple, repetitive work-related tasks in a non-fast production-paced setting (not including assembly line type work), involving no interaction with the public and only occasional interaction with supervisors and coworkers, and with no team/tandem collaborative type work. (R. 17-18.)

Plaintiff has no past relevant work. After considering Plaintiff's age, education, work experience, and RFC, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform, including hand packer, price marker and table worker inspector. (R. 25.)

---

[1] Because the Appeals Council found no reason to review that decision (R. 1), Defendant's final decision is the ALJ's decision.

## STANDARD OF REVIEW

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996) (per curiam); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS,* 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, but they are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

## DISCUSSION

Plaintiff argues the ALJ erred when he failed to find at step 2 that Plaintiff has severe impairments of ADHD and ODD. Plaintiff further argues that the ALJ's RFC assessment was not supported by substantial evidence and thus the vocational expert's testimony was not relevant.

**A.  Step 2**

At step 2 of the sequential evaluation process, a claimant must demonstrate the existence of impairments that are "severe" from a vocational perspective, and that the impairments meet the durational requirement of the Social Security Act. 20 C.F.R. § 416.920(a)(4)(ii). The step 2 requirement of "severe" impairment imposes a *de minimis* burden, designed merely to screen groundless claims. *McDonald v. Sec'y of HHS,* 795

F.2d 1118, 1123 (1st Cir. 1986). An impairment or combination of impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* at 1124 (quoting Social Security Ruling 85–28). In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id.*

At step 2, medical evidence is required to support a finding of severe impairment. 20 C.F.R. § 404.1521. *See also* Social Security Ruling 96-3p ("Symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect an individual's ability to do basic work activities unless the individual first establishes by objective medical evidence (i.e., signs and laboratory findings) that he or she has a medically determinable physical or mental impairment(s) and that the impairment(s) could reasonably be expected to produce the alleged symptom(s).") (citation omitted). A diagnosis, standing alone, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity. *Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014). Moreover, even severe impairments may be rendered non-severe through the ameliorative influence of medication and other forms of treatment. *Parsons v. Astrue*, No. 1:08-cv-218-JAW, 2009 WL 166552, at *2 n.2, *aff'd*, 2009 WL 361193.

If error occurred at step 2, remand is only appropriate when the claimant can demonstrate that an omitted impairment imposes a restriction beyond the physical and

4

mental limitations recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5. *Socobasin v. Astrue,* 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc v. Astrue,* No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")).

The ALJ found that Plaintiff has a severe combination of mental impairments of affective disorder, anxiety disorder and personality disorder. (R. 14.) On April 24, 2018, Plaintiff supplemented the record with a mental RFC assessment signed by Niamh Holohan, M.D, in which report Dr. Holohan wrote, "[c]lear oppositional behavior which is immediate. He does have the potential to work but he is adamant that he is not the problem [and] others' misunderstanding of him is." (Ex. 35F, R. 1309.)

As to Plaintiff's ADHD, as the ALJ observed, Plaintiff reported that "his ADHD is well controlled currently since being on Ritalin." (R. 14 (citing R. 670).) The ALJ found that Plaintiff's ADHD is "sufficiently managed medically, and amenable to proper control by adherence to recommended medical management and medication compliance." (R. 14.)

The ALJ did not specifically address Plaintiff's claim of impairment due to ODD at stage 2 of the process, but did address the ODD, along with the ADHD, in his RFC discussion. In the context of the ALJ's assessment of Plaintiff's RFC, the ALJ gave Dr. Holohan's opinion partial weight, noting that it was based on a singular evaluation and that objective longitudinal evidence, including the lack of substantive mental health treatment,

5

was insufficient to support the extent of Dr. Holohan's conclusions. (R. 23.) The ALJ pointed to the lack of any mental health treatment since the age of eighteen, other than the examination by Dr. Holohan, in his review of Dr. Holohan's report and the medical record. (R. 21.) In addition, although Plaintiff argues that the record contains several other psychological evaluations in which Plaintiff was diagnosed with ODD, as the ALJ noted, the diagnoses were all made before Plaintiff's eighteenth birthday. (R. 21.) The ALJ's reliance on the lack of a formal diagnosis of and treatment for ODD following Plaintiff's eighteenth birthday is reasonable and supportable.

Even if the ALJ erred and Dr. Holohan's records are construed as a diagnosis of ODD and a finding that the ODD has more than a minimal effect on Plaintiff's ability to work, remand is not warranted. Remand is only appropriate if Plaintiff can demonstrate that the ODD imposes an additional restriction beyond those recognized in the Commissioner's RFC finding, and that the additional restriction is material to the ALJ's "not disabled" finding at step 4 or step 5. *Socobasin v. Astrue*, 882 F. Supp. 2d 137, 142 (D. Me. 2012) (citing *Bolduc*, 2010 WL 276280, at *4 n. 3 ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.")). Dr. Holohan did not attribute any particular limitations to the diagnoses of either ADHD or ODD in his mental RFC assessment. (Ex. 35F.) In addition, Plaintiff has not otherwise demonstrated that any additional restrictions are warranted. In fact, as discussed below, in his RFC assessment, the ALJ considered Dr. Holohan's records and included restrictions to address Dr. Holohan's concerns about Plaintiff's ability to interact with

6

others.

**B.     Plaintiff's Mental RFC**

The ALJ found that Plaintiff "is capable of performing simple, repetitive work-related tasks in a non-fast production paced setting (no assembly line type work), involving no interaction with the public and only occasional interaction with supervisors and coworkers, but not team/tandem collaborative type work. [Plaintiff] is able to make simple work related decisions and adapt to simple changes in a routine work setting." (R. 17.) The ALJ's decision is supported by the medical evidence and the record lacks any reliable evidence to suggest that Plaintiff's ODD would result in any further limitations.

The ALJ acknowledged Plaintiff's testimony that he suffers from overwhelming depression, is easily overwhelmed with people, and has serious anger issues. (R. 19.) The ALJ found that the Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms, however, were not entirely consistent with the medical and other evidence. (*Id.*) For example, the ALJ noted that, other than Dr. Holohan's post-hearing examination, the record lacks any mental health treatment since Plaintiff reached the age of eighteen. (R. 21.) Moreover, as the ALJ also observed, Plaintiff's records reflect Plaintiff's participation in activities such as housekeeping, cooking, shopping, care for his personal hygiene, riding a bike, swimming, skateboarding, playing computer games, going on social media, taking pictures, watching movies, and reading, as well as gardening with his mother and making jewelry and selling it online. (Exs. 13F & 16F.) Plaintiff also reported an interest in animals and video games, and has helped others online. (Ex. 34F.)

While Plaintiff argues the ALJ improperly relied on Plaintiff's daily activities to

7

determine the appropriate limitations, the ALJ did not base the assessment of Plaintiff's ability to work solely on the extent of Plaintiff's daily activity. The ALJ's discussion of Plaintiff's daily activities was in the context of the ALJ's assessment of whether the symptoms reported by Plaintiff were consistent with the evidence. In other words, the ALJ discussed and assessed the daily activities as part of his assessment of Plaintiff's subjective complaints regarding the intensity and persistence of his claimed symptoms. Such an assessment is permissible under Social Security Ruling 16-3p "provides guidance about how [components of the Social Security Administration will] evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims under Titles II and XVI of the Social Security Act (Act) and blindness claims under Title XVI of the Act." 81 Fed. Reg. at 14166. The Ruling recognizes that a claimant or others might make statements that are consistent or inconsistent with the claimant's subjective report of symptoms. The Ruling thus provides:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities for an adult.... In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities ....

*Id.* at 14170.

Here, the ALJ permissibly considered certain activities in which Plaintiff has engaged as part of the ALJ's evaluation of Plaintiff's reported symptoms (R. 22) and determined that Plaintiff is not as limited as he asserts. The ALJ did not base the RFC

8

assessment on the evaluation of Plaintiff's statements to the exclusion of the medical opinion evidence. The ALJ, however, did not discount Plaintiff's statements entirely. Indeed, in establishing the RFC, the ALJ gave Plaintiff the "highest benefit of the doubt" after assessing Plaintiff's reported activity level. (R. 22.)

The ALJ's RFC assessment is supported by the medical evidence and the assessment is not the product, as Plaintiff contends, of the ALJ's impermissible interpretation of raw medical data. The ALJ gave partial weight to the evaluations of Jonathan Freedman, Ph.D. and John Hale, M.D., who each performed psychological consultative examinations of Plaintiff, in February 2016 and June 2016, respectively. (R. 23-24.)[2] Dr. Freedman determined that Plaintiff's persistence was adequate, his ability to manage work pressures unimpaired, and his social interaction ability suitable for work, with his capacity to engage in appropriate relations with coworkers within normal limits. Dr. Freedman also found that the Plaintiff is able to adapt to circumstances, and that his ability for understanding, concentration, following instructions, memory and language were suitable for employment. (Ex. 13F.) Dr. Hale found Plaintiff had the ability to follow work-related rules and authority, be dependable and reliable, and handle normal stressors in a work environment, with intact concentration, memory, and ability to understand information and no indication of having difficulty carrying through on work expectations.

---

[2] In contrast, the ALJ gave little weight to the assessments of State agency psychological consultants Brian Stahl, Ph.D., and Thomas Knox, Ph.D., who the ALJ felt provided insufficient consideration of the Plaintiff's prior disability allowance in determining that Plaintiff's mental impairments were not severe. (R. 24.) Moreover, the ALJ found that evidence following their assessments, including the Plaintiff's hearing testimony, supported the finding that the combined impact of the claimant's mental conditions resulted in more than a minimal functional impact. (*Id.*)

(Ex. 16F.)³

The ALJ also gave partial weight to the opinion of Dr. Holohan, who determined that Plaintiff had marked limitations in the ability to sustain an ordinary routine without special supervision, work in coordination with or proximity to others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms, or to deal with the stress of semiskilled and skilled work. (R. 23.) Dr. Holohan also found that Plaintiff has extreme limitations in the ability to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. (*Id.*)

A review of the record thus reveals that in his assessment of Plaintiff's RFC, the ALJ considered all the evidence regarding Plaintiff's mental health and its impact on Plaintiff's work capacity, including medical opinion evidence, and included in Plaintiff's RFC restrictions to address the challenges presented by Plaintiff's mental health issues. While the RFC does not reflect all the limitations that any one medical expert found, the ALJ was not required to adopt any one opinion. The RFC was based at least in part on the partial weight afforded the opinions of Drs. Freedman, Hale and Holohan. The ALJ thus did not impermissibly interpret raw medical data.

The RFC assessment is otherwise supportable. Given that the ALJ limited Plaintiff to work that involved no contact with the public and only occasional interaction with

---

³ Plaintiff argues that the ALJ erred in giving significant weight to the August 2016 decision of State agency Decision Hearing Officer Gail Fowlie. (*See* Exs. 6B & 7B.) There is no suggestion that the ALJ was under any misapprehension that DHO Fowlie's determination was a medical opinion, however, and the ALJ was entitled to consider evidence from nonmedical sources, including DHO Fowlie's decision. *See* 20 C.F.R. §§ 416.904, 616.913(a)(4) (2017).

10

coworkers and supervisors, the ALJ's assessment addressed some of Dr. Holohan's concerns about Plaintiff's ability to interact with others[4] and was arguably more restrictive than required by Drs. Hale and Freedman. To the extent the ALJ's RFC gave Plaintiff the benefit of the doubt as to his report as to his limitations and included restrictions more favorable to Plaintiff than some or all the experts based in part on Plaintiff's testimony, the ALJ's RFC finding was not error. *Kristina D.B. v. Berryhill*, No. 18-cv-00088-JHR, 2019 WL 1407407, at *4 (D. Me. Mar. 28, 2019).

In short, given Plaintiff's statements and the partial weight afforded the opinions of Drs. Hale, Freedman and Holohan, and the evidence upon which the ALJ relied to discount certain opinions offered by Dr. Holohan, the ALJ's RFC assessment is supported by substantial evidence, and the assessment is not the product of the ALJ's improper assessment of raw medical data.

## C. Vocational Expert's Testimony

Plaintiff challenges the testimony of the vocational expert. Because the Plaintiff's challenge depends on the Court finding that the ALJ's step 2 and RFC findings are erroneous, given the above analysis, Plaintiff's argument must fail.

## CONCLUSION

Based on the foregoing analysis, I recommend the Court affirm the administrative decision.

---

[4] The fact that the ALJ addressed the issues generated by Dr. Holohan's report underscores the lack of any additional restrictions that a finding of ODD as a severe impairment would require.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 27th day of June, 2019.